MILBY & DOW COAL AND MINING COMPANY AND ENNIS ICE COMPANY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 22021, 22022, 26259, 42184. Promulgated September 17, 1931.

*Chas. H. Garnett, Esq.*, for the petitioners.
*Elden McFarland, Esq.*, for the respondent.

42

OPINION.

LANSDON: The petitioner contends that the Board has jurisdiction over the years 1917 and 1918, since the respondent has partially rejected claims for abatement covering those years. It alleges in its brief that the facts shown come squarely within the provisions of section 283 (e) of the Revenue Act of 1926, and cites as controlling our decision in *Miami Metals Co.*, 10 B. T. A. 421. We do not agree with petitioner that section 283 (e) is applicable here. That section deals with the determination of a deficiency, while here no deficiencies exist. We are of the opinion that the Board has no jurisdiction as to the years 1917 and 1918, since the tax shown on the returns has not been increased by the respondent. *Estate of John Ballot*, 3 B. T. A. 583.

The petitioner claims deductions for depreciation of its plant, equipment and development for each of the years, based upon a figure determined by adding to the depreciated value of an inventory and appraisement of February 28, 1911, the depreciated cost of additions thereafter. The respondent has reduced the inventory and appraisement value of $249,660.85 as determined by the petitioner to $211,387. Based upon the inventory and appraisement the petitioner now claims a March 1, 1913, value of $244,003.82 and contends that depreciation should be computed upon a unit-of-production basis.

We do not agree with petitioner's method of arriving at the March 1, 1913, value claimed or with the conclusion reached. There is nothing in the record to establish that all of the property shown in the inventory of February 28, 1911, existed on March 1, 1913. Neither do we agree with petitioner that depreciation should be computed on a unit-of-production basis. We have allowed depreciation on such basis in a number of cases where the useful life of the depreciable assets was practically coextensive with the life of the mine (*Kehota Mining Co.*, 3 B. T. A. 885; and *Grand River Gravel Co.*, 22 B. T. A. 1124), but here there is no showing as to the remaining useful life of the assets or the salvage value, if any. The respondent's determination as to depreciation is approved.

The petitioner attempts to establish its invested capital for each of the years 1919, 1920 and 1921 by adding to the total of the inventory and appraisement of its plant, equipment and development made on February 28, 1911, the cost of additions thereto and depreciating the total down to the taxable year. It contends that such figure represents actual cost of its plant, equipment and development and that it is entitled to have its invested capital determined in such amount.

Section 326 of the Revenue Act of 1921, which is the same as section 326 of the 1918 Act, provides that invested capital for any year means: (1) Actual cash paid in for stock; (2) actual cash value of tangible property other than cash paid in for stock; (3) paid-in surplus or earned surplus and undivided profits; and (4) intangible property paid in for stock (subject to certain restrictions and limitations). Even granting that the figure contended for by the petitioner represents cost of its assets, we still have no basis for computing invested capital. Petitioner was organized about 1900, and if we are to determine invested capital we must know the amount placed at risk in petitioner's business at that time, additional capital contributions, if any, and the earnings accumulated and left in the business thereafter. Proof merely that development and equipment of petitioner's leases cost a certain amount does not determine any item of invested capital. A mere conversion of cash paid in for stock of petitioner into mine equipment would have no effect on statutory invested capital.

Furthermore, we are not convinced that the figure shown on the inventory and appraisement of February 28, 1911, represents cost of the property. To the extent that such figure may represent an appraisement of the value at that time, it certainly may not be considered in determining invested capital. *La Belle Iron Works*, 256 U. S. 377. The respondent's determination of invested capital must be approved.

The respondent has determined depletion for each of the years involved on the basis of a March 1, 1913, value of $20,921.76. The petitioner contends that the value of its leases was at least $250,000. The evidence as to the March 1, 1913, value of the leaseholds consists of the opinions of several expert witnesses called by the parties; proof of the sale of two-thirds of petitioner's capital stock in 1912 for $200,000, and statements as to value supported by affidavits submitted by petitioner to respondent during negotiations for settlement of the tax liability here in controversy, which continued from 1920 until 1925.

The petitioner's witnesses testified that in their opinion the leases had a value at March 1, 1913, of from $250,000 to $300,000. The two experts called by the respondent testified that the leases had no value, or, at most, a value of $50,000 at March 1, 1913. The sale of two-thirds of the petitioner's capital stock was made in 1912, after a disagreement among the three stockholders. We do not know what other assets were owned by petitioner nor what liabilities were charged against such assets. The price of $200,000 paid for the capital stock may have represented values other than leaseholds. The price paid for the stock would also depend on the amount of liabilities outstanding to be subtracted from the value of the assets and would be influenced by the nature of the disagreement among the stockholders.

At various times between November 15, 1920, and July 18, 1925, the petitioner submitted statements, reports and affidavits to the respondent in which it claimed a value for its leaseholds of from $88,000 to $100,000. Affidavits of several experts who were acquainted with the property were submitted during such time, all of which agree on a value of from $88,000 to $100,000.

After careful consideration of all the evidence we are of the opinion that petitioner's leaseholds, including the known right to acquire an additional 640 acres without cost, had a fair market value on March 1, 1913, of $100,000. Depletion deductions for each of the years should be computed on the basis of such value, using the figures for production and estimated reserves set forth in our findings of fact above.

The record discloses that for 1925 the respondent computed a statutory net loss of $10,761.84, which was carried forward and deducted

from income for 1926. The petition in Docket No. 42184 asks that the amount of such net loss be redetermined to include any additional allowance by the Board for depletion or depreciation and that such amount as redetermined be carried forward and deducted from income for 1926. It is obvious that the net loss heretofore determined by the respondent must be adjusted by the application thereto of the results of the recomputation of depletion on the basis herein determined.

*Decision will be entered under Rule 50.*